# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JULIANN COOK,

        Plaintiff,

v.                                      Case No. 18-CV-1364

ANDREW M. SAUL[1],
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Juliann Cook alleges she has been disabled since July 30, 2009, a date she later amended to September 3, 2013. (Tr. 13.) In February 2014 she applied for disability insurance benefits (Tr. 199-202) and for supplemental security income benefits (Tr. 203-07). After her applications were denied initially (Tr. 69-90) and upon reconsideration (Tr. 91-110), a hearing was held before an administrative law judge (ALJ) on January 26, 2017 (Tr. 39-68). On June 22, 2017, the ALJ issued a written decision concluding Cook was not disabled. (Tr. 13-28.) The Appeals Council denied Cook's request for review on June 29,

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 4), and this matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Cook "has not engaged in substantial gainful activity since September 3, 2013, the amended alleged onset date[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Cook has the following severe impairments: "borderline intellectual functioning, depression, anxiety, mood disorder and obesity[.]" (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d), and 416.926 (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Cook "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Cook has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Cook] (1) can occasionally climb stairs and ramps; (2) can never climb ladders and scaffolds; and (3) must avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. Further, [Cook] can (1) understand, remember and carry out simple instructions; (2) have occasional interaction with supervisors, coworkers and the public; (3) only make simple, work-related decisions; and (4) only tolerate occasional change in work location.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 404.1526, 416.965. Cook's past relevant work was as a hand packager. (Tr. 26.) The ALJ concluded that Cook "is unable to perform any past relevant work[.]" (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. At this step, the ALJ concluded that, "[c]onsidering [Cook's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Cook] can perform[.]" (Tr. 27.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Cook's age, education, work experience, and RFC could perform the requirements of occupations such as a small parts assembler, electronics worker, and laundry folder. (*Id.*) After finding that Cook could perform work in the national economy, the ALJ concluded that she was not disabled. (Tr. 28.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve

4

conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

## ANALYSIS

Cook argues that the ALJ erred (1) in not considering the impact of her failure to comply with attendance policies on her ability to hold a full-time job; (2) in not giving more weight to the opinion of her social worker, Brittney Neidhardt-Gruhl; and (3) in issuing an internally inconsistent decision. (ECF No. 9.)

**I.    Absenteeism**

Cook first argues that the ALJ erred in not fully considering her absenteeism issues, especially during a probationary period. (ECF No. 9 at 9-10.) Cook contends that "[t]hough adherence to attendance continues to play a substantial role in [her] inability to maintain fulltime employment, the ALJ essentially glosses over it under the purview that [she] completed her fourteen week vocational training course with adequate attendance." (*Id.* at 9 (internal citation omitted).) Cook also contends that "treating sources Rosalyn McFarland, a nurse practitioner, and Brittney Neidhardt-Gruhl, a licensed social worker, both opined that Ms. Cook would miss at [sic] about three days

5

per month, or more." (*Id.*) The Commissioner responds, "Plaintiff's argument is a bit puzzling, as she insists the ALJ failed to consider this evidence but also acknowledges that the ALJ directly addressed this evidence in his decision." (ECF No. 14 at 21 (internal citation omitted).)

> Discussing Cook's attendance at vocational rehabilitation training, the ALJ stated:
>
> Once [Cook] started working she initially had problems with attendance and was not present for six shifts in a month. Her attendance improved during the 14 weeks of training. In December 2015, it was noted she was a "hard-working employee" and "able to perform the duties in her job description with no problems."

(Tr. 22 (internal citations omitted).) The record reflects that attendance was initially an issue for Cook during her vocational training (*See* Tr. 498, 502-03, 506-07); however, by the final month of her program, it was reported that "Juliann had no behavior or attendance issues" (Tr. 510). Thus, it is not accurate to say that the ALJ "glossed over" Cook's attendance issues.

As for Cook's allusion to a thirty-day probationary period, as the Commissioner points out there is no evidence in the record from the VE or otherwise about probationary periods and what the acceptable absence rate would be. Thus, the ALJ's conclusion about Cook's attendance during the entire training program being acceptable was supported by substantial evidence.

With regard to Cook's suggestion that the ALJ ignored the opinions of McFarland and Neidhardt-Gruhl that Cook would miss three or more days per month, the ALJ gave

6

several reasons for discounting their opinions and ultimately giving them little weight. (Tr. 24-25.) The court need not repeat them here.

The ALJ adequately addressed Cook's absenteeism. Accordingly, the court finds no error.

## II. Social Worker Neidhardt-Gruhl

In June 2016 Neidhardt-Gruhl opined that Cook would have no useful ability to function in working with or getting along with others without being distracted or a distraction herself, working "a normal workday and workweek without interruptions from psychologically based symptoms," dealing with stresses of work, and keeping attention for two hours. (Tr. 361.) Neidhardt-Gruhl also stated that "[Cook] has a very difficult time interacting with others due to (in part) symptoms of hypomania which include pressured speech, interruptions, loud volume and difficulty understanding social cues." (Tr. 362.) Finally, she opined that Cook would likely be absent from work about three days per month because of her impairments or treatment. (Tr. 363.)

The ALJ gave Neidhardt-Gruhl's opinion "little weight," explaining:

> First, I note that a social worker is not an acceptable medical source. Second, the statement provides that [Cook] first started treatment with Ms. Neidhardt-Gruhl in February 2016, but the record does not contain treatment notes from Ms. Neidhardt-Gruhl or clearly define what role she had in the claimant's treatment. Third, the provided explanations and rationales are largely in general terms without specific or objective examples. Fourth, the statement focuses on [Cook's] speech speed and volume, which she states may be distracting for prospective employers. However, employer hiring practices is not a consideration in the disability

adjudication process. Further, the statement is not entirely consistent with the medical evidence of record.

(Tr. 24-25 (internal citations omitted).) Cook argues that the ALJ erred in not giving more weight to Neidhardt-Gruhl's opinion. (ECF No. 9 at 10-11.)

Although the ALJ was correct in stating that "a social worker is not an acceptable medical source" (Tr. 24), that does not mean the ALJ can automatically discount the social worker's opinion.

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1). Although Neidhardt-Gruhl's opinion is not entitled to controlling weight, the ALJ is still required to consider the 20 C.F.R. § 404.1527(c) factors in determining how much weight to give her opinion. SSR 06-3p.

Even though, as Cook argues, "Ms. Neidhardt-Gruhl had weekly sessions with Ms. Cook for months and as such was in the best position to provide a detailed, longitudinal picture of Ms. Cook's impairments…" (ECF No. 9 at 11), her opinion was inconsistent with the medical evidence in the record. As the ALJ explained:

> [T]he medical evidence shows conservative, routine mental health treatment during the relevant time period and that her symptoms have been generally stable. The consultative examiner showed [Cook] had no obvious difficulty focusing her attention on the task at hand and she demonstrated adequate ability to maintain her concentration on simple sequential tasks. This contradicts the opinion [Cook] has no useful ability to maintain attention. In regard to the [Cook's] manner of speech, Dr.

8

> Tummala, her psychiatrist, noted her speaking is more of her behavior rather than a mental disorder. Also, a different therapist noted she had "full confidence" in [Cook's] competence in participating in a work training program.

(Tr. 25 (internal citations omitted).) The ALJ gave a reason supported by substantial evidence for discounting Neidhardt-Gruhl's opinion. As such, the ALJ did not err in giving her opinion little weight.

### III.  ALJ Decision

Finally, Cook argues that the ALJ's decision is not internally consistent. (ECF No. 9 at 11-12.) Cook contends:

> At step three, the ALJ stated that Ms. Cook could perform "a full range of work at all exertional levels," with non-exertional limitations and mental limitations, but at step four goes on to find that Ms. Cook is unable to work past relevant work, which is classified as medium, unskilled work, which is a contradiction.
>
> The ALJ states that Ms. Cook's ability to perform work at all exertional levels has been compromised by non-exertional limitations. However, it is not explained why the non-exertional limitations of occasional stair and ramp climbing, inability to climb scaffolds and ladders, and the avoidance of concentrated exposure to hazards such as unprotected heights and moving mechanical parts, would preclude Ms. Cook from doing her past relevant work as a hand packager. Additionally it is not explained how the given jobs at step five would differ in terms of non-exertional limitations or mental capacity as they are all, similar to a hand packager in these regards in that they are unskilled work with an SVP of 2, which are essentially conducted in isolation.
>
> The ALJ's conclusion that Ms. Cook can perform a full range of work at all exertional levels, yet cannot perform her past relevant work, is contradictory, and therefore in error.

(*Id.* at 11 (internal citations omitted).)

While Cook may believe that, in light of the nonexertional limitations in the RFC, there is an inconsistency between the conclusion that she could not perform her past job but could perform other jobs, the VE did not believe there was an inconsistency. It was the VE who opined that, given the limitations in the RFC, Cook would not be able to perform her past job but would be able to perform other jobs. And the ALJ relied on that opinion in reaching his conclusion that Cook was not disabled. Even if Cook is right, and the ALJ had found that Cook could perform her previous work, the ALJ would still have concluded that she was not disabled. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand.")

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of September, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

10